## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ALTERIK ROGERS,

       Petitioner,

       v.

WARDEN, BeCI,

       Respondent.

          **CASE NO. 2:16-CV-0638**
          **JUDGE ALGENON L. MARBLEY**
          **Chief Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition,* Respondent's *Return of Writ*, Petitioner's *Traverse,* and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Seventh District Court of Appeals summarized the facts and procedural history of the case as follows:

> On January 4, 2014 at approximately 6:30 in the evening multiple shots were fired at the driver's side of a Jeep Cherokee driven by Robert Washington in the Pleasant Heights section of Steubenville, Ohio. Tr. 112, 116. Washington stated he had just left Pleasant Food Mart, drove up Maxwell Street towards State Street, and upon turning left onto Lawson Avenue multiple shots were fired at his vehicle by Appellant, Washington's former neighbor. Tr. 118, 130, 139. According to Washington, Appellant parked his white Acura on State Street, exited the vehicle, stood on the curb of the street, and fired the shots towards Washington's vehicle. Tr. 138–139. Washington immediately drove to his house on Lawson Avenue and called the police.
>
> The vehicle was riddled with 8 bullet holes, all on the driver's side. One bullet traveled through the vehicle, bruised Washington's left

thigh, and landed in his jacket pocket along with glass from the windows. Fortunately, Washington sustained no other injuries.

Two witnesses at the scene testified that after firing multiple shots, the gunman got into a white car parked on State Street and sped off down the alley between Lawson Avenue and Maxwell Street. Tr. 185, 190. Neither witness could identify the shooter. Tr. 187, 193.

As a result of this incident, Appellant was questioned. He gave multiple accounts of his whereabouts during the shooting. A gunshot residue test was performed on his hands and his clothing was taken into evidence.

Thereafter, he was indicted on one count of felonious assault in violation R.C. 2903.11(A)(2), a second-degree felony, and one count of having a weapon while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony. The felonious assault charge contained an attendant firearm specification, a violation of R.C. 2941.145. There was a third charge in the indictment, Menacing by Stalking. However, it was severed at the request of Appellant and tried separately.

The trial on the remaining two charges occurred on June 4, 2014. The jury found Appellant guilty of the two charges and the firearm specification. Sentencing occurred on July 2, 2014; Appellant was sentenced to an aggregate term of 14 years. 7/2/14 J.E. He received an 8 year sentence for the felonious assault conviction, a mandatory 3 year sentence for the firearm specification, and a 3 year sentence for the weapons under disability conviction. All sentences were ordered to be served consecutive to each other. 7/2/14 J.E.

Appellant timely appealed his conviction and sentence.

*State v. Rogers*, 34 N.E.3d 521 (Ohio 7th App. Dist. 2015). Petitioner asserted that his convictions on felonious assault and having a weapon while under a disability were against the manifest weight of the evidence, that the trial court violated Ohio law when it imposed a maximum consecutive sentence, that he was denied the effective assistance of counsel, and that the "true copy" of a prior felony drug conviction from New Jersey failed to establish that he was under disability during the commission of the felonious assault. *Id*. at 522. On June 1, 2015, the

appellate court affirmed the judgment of the trial court, but reversed his conviction on having a weapon while under disability and vacated his sentence on that charge. *Id.* at 530. On September 30, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Rogers*, 143 Ohio St.3d 1481 (Ohio 2015).

On August 17, 2016, Petitioner filed this *pro se Petition*. He asserts that his conviction on having a weapon while under disability was against the manifest weight of the evidence (claim one);[1] that he was denied the effective assistance of trial counsel (claim two); and that the trial court improperly admitted evidence of his prior conviction (claim three). It is the position of the Respondent that Petitioner's claims lack merit.

## Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state court determinations. The AEDPA is "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court;" federal courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ──U.S. ──, ──, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ( "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

---

[1] This appears to be in error. Petitioner also refers to his conviction on felonious assault. *Petition* (ECF No. 5, PageID# 52.) The Court presumes that he intends to challenge his felonious assault conviction, since the state appellate court has already reversed his conviction on having a weapon while under a disability and vacated his sentence on that charge.

The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Moreover, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013)(citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1), (2). The United States Court of Appeals for the Sixth Circuit has explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards of § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively

unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted)(citing *Williams v. Taylor*, 529. U.S. at 409, and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002)(en banc))); *see also Nicely v. Mills*, 521 Fed.Appx. 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based only on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182.

### Claim One

In claim one, Petitioner asserts that his conviction on felonious assault was against the manifest weight of the evidence. This claim fails to provide a basis for federal habeas corpus relief. *See Taylor v. Warden, Lebanon Correctional Institution*, No. 2:16-cv-237, 2017 WL 1163858, at *10 (S.D. Ohio March 29, 2017)(citing *Williams v. Jenkins*, No. 1:15cv00567, 2016

WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) (citing *Nash v. Eberlin*, 258 Fed.Appx. 761, 765, n. 4 (6th Cir. 2007)); *Norton v. Sloan*, No. 1:16-cv-854, 2016 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017)(citing *Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *3 (S.D. Ohio))("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law.").

Under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Petitioner requests the Court to construe this claim as a constitutional challenge to the sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979). However, Petitioner failed to raise this same issue in the state appellate court. In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal

constitutional right that threatens to invalidate a state criminal judgment. In the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any one of four ways: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Further, general allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement. *Id*.

Even liberally construing his pleadings, the record does not indicate that Petitioner raised a claim that the evidence was constitutionally insufficient to sustain his convictions in the state appellate court. He argued instead only that his convictions were against the manifest weight of the evidence. He referred to state law in support of that claim. He did not reference *Jackson v. Virginia*, 443 U.S. at 307, the seminal case on insufficiency of the evidence or any federal cases in support of his claim, nor did he refer to state cases relying on federal law regarding the law on insufficiency of the evidence. Petitioner likewise did not refer to the United States Constitution or the Due Process Clause in support of his claim. *See Merit Brief of Appellant* (ECF No. 8-1, PageID# 113, 130-33.) This Court therefore simply cannot conclude that Petitioner preserved for federal habeas corpus review a claim that the evidence was constitutionally insufficient to sustain his conviction by raising a claim that his conviction was against the manifest weight of the evidence. *See Morris v. Hudson*, No. 5:06-cv-2446, 2007 WL 4276665, at 2-3 (N.D. Ohio Nov. 30, 2007) (citations omitted). Moreover, Petitioner has failed to establish cause for such failure. Therefore, Petitioner has waived such claim for review in these proceedings.

Further, the record reflects that constitutionally sufficient evidence supported Petitioner's conviction. The state appellate court rejected Petitioner's arguments in relevant part as follows:

> Appellant argues the convictions are against the manifest weight because there is no competent credible evidence that he is the gunman. He contends no gunshot residue was found in his vehicle or on his clothes, and no witness, other than Washington, identified him as the shooter. Appellant claims Washington's testimony established Washington has a personal animus towards Appellant. This, according to Appellant, negates Washington's credibility.

> Appellant is correct that Washington was the only witness able to identify Appellant as the shooter. However, Washington was adamant that the shooter was Appellant. His testimony established the two used to be neighbors. That testimony easily provides a basis to establish that Washington would be able to identify Appellant.

> Admittedly, Washington's testimony also indicates that the two were not on good terms. Testimony and evidence established that in 2012, when the two were neighbors, Washington called the police because Appellant allegedly pulled a gun on him after the two got into a fight over a parking space in front of their houses. State's Exhibit 6. This resulted in Appellant being charged with aggravated menacing. Tr. 233. At the resolution of that case Appellant received a 20 day sentence and a No Contact Order was issued for Washington and his family. State's Exhibits 9 and 10. Also, two days prior to the shooting, there was another incident at McDonald's. Washington testified he was in his car going through the drive-thru with his family when Appellant exited the restaurant and made a hand gesture of a gun with the trigger being pulled at Washington. Tr. 135.

> Given the evidence, the jury was faced with a credibility determination of whether to believe Washington's identification. Because the jury was in the best position to judge Washington's credibility and whether his personal issues with Appellant affected his ability to correctly identify the shooter, we will not second-guess their determination.

> Furthermore, the jury had before it circumstantial evidence which linked Appellant to the shooting. Two eye witnesses did avow that after the shooting, the shooter got into a white car and sped off up the alley between Lawson Avenue and Maxwell Street. Tr. 185, 190. An officer testified a white Acura registered to Appellant was

found in the alley between Maxwell Street and Lawson Avenue, which is close to Appellant's house on Park Street. Tr. 236, 237. Another officer investigating the scene stated that footprints, that showed a long stride, were found in the snow going away from the white Acura toward Park Street. Tr. 349. This testimony would support the conclusion that someone was running from the white Acura toward Park Street. The officer that located and interviewed Appellant shortly after the shooting stated Appellant said he had been inside the residence. Tr. 204. However, the officer noticed that Appellant was sweating profusely; the "sweat was rolling off his face and off of his head." Tr. 204. The jury concluded, given all the above testimony, that the reason Appellant was sweating profusely was because he had ran from his car to the house on Park Street after the shooting.

Furthermore, a recorded phone call from Appellant and his girlfriend while he was in jail was played for the jury. During this phone call, Appellant tells his girlfriend to go to a boat that is located near their home and to get something out of it. He describes the item as grey and black. He tells her to hurry and make sure no one is watching. He also says to hurry because "they" may be listening. Once she finds it he tells her to give it to someone to keep.

The state's position is that this grey and black item that he wants her to quickly find is the gun. This is a plausible conclusion given his instructions for her to hurry, to make sure no one is watching her, and considering that the item is described as black and grey.

Considering all of that evidence and the logical conclusions that can be drawn from that evidence, it was logical for the jury to conclude that Appellant was the shooter.

However, the above evidence was not the only evidence that Appellant was the shooter. A gunshot residue test was also performed on Appellant's hands, clothing, and his white Acura. The car, clothing, and sample from his left hand came back negative for gunshot residue. However, the sample taken from Appellant's right hand came back positive, meaning that particles were found that are highly indicative of gunshot primer residue. Tr. 299, 301. On cross-examination it was brought to light that the least amount of particles that could be found were found on Appellant's right hand. Tr. 307.

Considering all of the above, the jury was in the best position to determine Washington's credibility. Furthermore, when

considering all the evidence, it cannot be concluded that the jury clearly lost its way and created a manifest miscarriage of justice; given the evidence it is plausible and believable to conclude that Appellant was the shooter and thus, he did commit felonious assault and he did have a weapon in his possession.

This assignment of error is meritless.

*State v. Rogers*, 34 N.E.3d at 524. Petitioner has failed to meet his burden of rebutting the presumption of correctness afforded to the state court's findings of fact.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319. In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing Jackson, at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume—even if it does not appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson*, at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Second, and even if a de novo review of the evidence leads to the conclusion that no rational trier of fact could have so found, a

federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner cannot do so here.

For the reasons addressed by the state appellate court, when viewing all of the evidence in the light most favorable to the prosecution, the evidence was constitutionally sufficient to sustain Petitioner's conviction on felonious assault. Washington's testimony alone provided constitutionally sufficient to establish Petitioner's identity as the shooter. *See Trial Transcript* (ECF No. 9-1, PageID# 379-80); *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) ("[T]his Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction.") (citing *United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966); *O'Hara v. Brigano,* 499 F.3d 492, 500 (6th Cir. 2007); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996)).

Claim one is procedurally defaulted and without merit.

### Claim Two

In claim two, Petitioner asserts that he was denied the effective assistance of trial counsel, because his attorney asked open ended questions on cross-examination regarding prior incidents between Washington and Petitioner, and failed to file a motion to suppress evidence of Petitioner's phone call from the jail to his girlfriend and BCI test results on gunshot residue tests. Petitioner additionally complains that his attorney failed to object to a discovery violation by the prosecutor, failed to move to strike Washington's testimony that Petitioner wanted to sell drugs on the side of his house on Park Street, failed to object to admission of Petitioner's written statement by Officer Crawford, and failed to object to Washington's reference to Petitioner as an "animal." (ECF No. 5, PageID# 68-9.)

The state appellate court rejected Petitioner's claim of ineffective assistance of counsel as follows:

We review a claim of ineffective assistance of counsel under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984). Specifically, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and prejudice arose from the lawyer's deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 142–143, 538 N.E.2d 373 (1989). When evaluating the performance of counsel, "courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 81. To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052

Appellant directs this court to multiple examples of what he claims is ineffective assistance of counsel. He contends open ended questions were asked on cross examination about other incidents that occurred between Washington and Appellant. He also contends counsel should have filed suppression or in limine motions regarding Appellant's phone call from the jail to his girlfriend and admission of the BCI report on gunshot residue.

These allegations do not amount to ineffective assistance of counsel. In reviewing the cross-examination, it appears counsel's trial strategy was to show the ill feelings between Appellant and Washington. Counsel was attempting to elicit past confrontations where Washington was at fault. It can be gleaned from the sentencing transcript that Appellant alleges Washington threatened his family and poisoned his dog. It seems Appellant's counsel was attempting to have this information disclosed to the jury through Washington's testimony. It has been explained that a reviewing court will not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel even if, in hindsight, it looks as if a better strategy was available. *State v. Cook,* 65 Ohio St.3d 516, 524, 605

N.E.2d 70 (1992). Moreover, debatable strategy very rarely constitutes ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987).

As to the motions for suppression and in limine, Appellant claims these motions would have possibly excluded the gunshot residue report and the jail phone call. Counsel did not file suppression or in limine motions; however, at trial, Appellant's counsel objected to the admission of the phone call to his girlfriend and the admission of the BCI report on gunshot residue. The objections were overruled; the trial court indicated the time to object was prior to trial.

The "[f]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel." (Internal quotations and citations omitted.) *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). "To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65. "'Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion.' " *State v. Logan*, 8th Dist. No. 88472, 2007-Ohio-2636, 2007 WL 1559305, ¶ 66, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980). This same analysis could apply to motions in limine.

Here, as aforementioned, counsel objected to the admission of both the BCI report and the phone call. As to the BCI report, counsel argued the full BCI file was not provided to him in discovery. Regarding the phone call, although counsel stated he knew about the phone call, counsel claimed it was not included in the discovery packet. The state claims the phone call was in the discovery packet, although it may not have been listed on the inventory sheet. With both pieces of evidence, the trial court indicated the proper time to bring this to the court's attention was prior to trial. Specifically for the BCI file, the court indicated if a motion had been filed the court would have required BCI to deliver the entire file. Likewise, the court would have ensured the recording of the phone call had been disclosed to counsel. There is nothing in the record to indicate any reason to suppress either piece of evidence or for the trial court to grant an in limine motion.

Furthermore, Appellant does not cite this court to any authority to demonstrate that any of the suggested motions would have had a

reasonable probability of success. *State v. Hillman*, 10th Dist., 2014-Ohio-5760, 26 N.E.3d 1236, ¶ 56. Therefore, there is no indication counsel's performance was deficient.

Even if counsel's performance could be characterized as deficient, it still must be shown that prejudice resulted. The gunshot residue test and the phone call did provide some evidence that Appellant was the shooter. However, that was not the only evidence. As discussed above, there was testimony from Washington that Appellant was the shooter; there was testimony that Appellant drove a white Acura; there was testimony from other witnesses that the shooter got into a white car and drove up an alley where Appellant's white Acura was found; and there was testimony concerning footprints going from the white Acura towards Park Street where Appellant lives. There was also testimony that Appellant gave the police differing accounts of where he was during the shooting, which goes to his credibility. For instance, at one point he claimed to be with his child making tacos and then changed his story to making spaghetti. Another time he said he was at the store when the shooting occurred and he thought someone was shooting at him, so he went home and then went outside with his child. All of these facts, without consideration of the gunshot residue test and the phone call, could lead to the conclusion Appellant was the shooter. It is not clear that the outcome would have been different and, therefore, Appellant was not prejudiced by any alleged deficient performance.

In fact, counsel was given time to review the entire BCI file and to hear the phone call prior to their admission. Counsel on cross examination of the gunshot residue test, clearly brought to light that the particles found on Appellant right hand were the least amount of particles that would register for gunshot residue, even though the test was taken less than an hour after the shooting. Counsel was prepared and attacked the evidence in a manner best available.

Consequently, there is no basis to find trial counsel's performance was deficient in this instance and/or that Appellant was prejudiced by counsel's performance. This assignment of error lacks merit.

*State v. Rogers*, 34 N.E.3d at 525-27.

"In all criminal prosecutions," the Sixth Amendment affords "the accused. . . the right. . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective

assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis*, 512 Fed.Appx. 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness." *Poole v. MacLaren*, 547 Fed.Appx. 749, 754 (6th Cir. Dec. 5, 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Poole*, 547 Fed.Appx. at 754 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." , 562 U.S. 86, 105 (2011). The Court observed that while "'[s]urmounting *Strickland* 's high bar is never. . . easy.'. . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult. . . ." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, ——, 130 S.Ct. 1473, 1485 (2010) (and citing *Strickland*, 466 U.S. at 689). The Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly

deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Again, for the reasons already well addressed by the state appellate court, Petitioner has failed to establish he is entitled to relief under the two-prong *Strickland* test. Where the petitioner alleges his counsel was ineffective for failing to file a motion to suppress, he must also establish that the motion would have succeeded and that the verdict would have been different absent the excludable evidence in order to demonstrate prejudice. *See Rodriguez v. Warden, Southern Ohio Correctional Facility*, 940 F.Supp.2d 704, 713 (S.D. Ohio March 15, 2013) (citing *Henness v. Bagley,* 644 F.3d 308, 317–18 (6th Cir. 2011) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Petitioner cannot do so here. Moreover, the strategic decisions of counsel, "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010) (citing *Strickland,* at 690)).

Claim two fails to provide a basis for relief.

### Claim Three

In claim three, Petitioner asserts that the trial court violated Ohio law and the Constitution when it permitted the admission of evidence regarding his prior conviction.

However, the alleged violation of state law or evidentiary rules does not provide a basis for relief. As a general matter, errors of state law, especially the improper admission of evidence, do not support a writ of habeas corpus. *See Estelle v. McGuire*, 502 U.S. 62 (1991);

*see also Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). To be entitled to habeas relief, a petitioner must demonstrate that an evidentiary ruling violated more than a state rule of evidence or procedure. In order to prevail, a petitioner must show that the evidentiary ruling was "so egregious that it resulted in a denial of fundamental fairness." *Giles*, 449 F.3d at 704 (citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). Stated differently, "'[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.' " *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). A state court evidentiary ruling does not violate due process unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Giles,* 449 F.3d at 704 (citing *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001)). Such are not the circumstances here.

The state appellate court sustained Petitioner's claim that the trial court erred in admitting evidence of his prior conviction into evidence, reversing Petitioner's conviction on having a weapon while under a disability:

> Appellant was convicted of having a weapon while under disability pursuant to R.C. 2923.13(A)(3). For our purposes, that provision provides that unless relieved from the disability, the person shall not knowingly use a firearm if the person has previously been convicted of any felony offense involving illegal sale or trafficking in any drug. R.C. 2923.13(A)(3). In order to prove that Appellant was under disability at the time of the offense, the state offered into evidence a "True Copy" of a conviction for an "Aherice Rahman" from New Jersey for possession of cocaine with intent to distribute, a third-degree felony. State's Exhibit 18. The state offered evidence of Appellant's aliases and contended that "Aherice Rahman" is Appellant.
>
> Appellant contends this evidence does not comply with R.C. 2945.75(B)(1), which states:

(B)(1) Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction.

R.C. 2945.75(B)(1).

Appellant contends the "True Copy" of the prior conviction from New Jersey is not a certified copy, and thus, it fails to comply with the mandates of R.C. 2945.75(B)(1). Furthermore, he contends the record does not support the conclusion that he is "Aherice Rahman," the person who was convicted in New Jersey of felony drug possession/trafficking. These arguments are sufficiency of the evidence arguments.

Starting with the first issue of whether the judgment entry complies with R.C. 2945.75(B)(1), the Ohio Supreme Court has elucidated that "R.C. 2945.75(B)(1) permits the state to prove a prior conviction by submitting a judgment entry of the conviction, but the statute does not restrict the manner of proof to that method alone." *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, ¶ 1. "For example, an offender may, and often does, stipulate to a prior conviction to avoid the evidence being presented before a jury." *Id*. at ¶ 14. That said, if the State "chooses to prove a prior conviction by using a judgment entry, that entry must comply with Crim.R. 32(C)." (Emphasis omitted.) *Id*. at ¶ 1. For a judgment entry to comply with Crim.R. 32(C), it "must set forth (1) the fact of a conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *Id*. at ¶ 23.

Here, there is no stipulation. The issue is not whether the judgment entry complies with Crim.R. 32(C), but rather does it qualify as a certified copy. The judgment is stamped "TRUE COPY." When a judgment is certified in Ohio it is sworn to be a true copy of the judgment. Although, this "True Copy" stamp is unlike a certified copy stamp that occurs in Ohio courts, the state swore that this copy is what it received from New Jersey when it asked for a certified copy. Tr. 362.

We do not need to decide whether this "True Copy" complies with the certified copy requirements in R.C. 2945.75(B)(1), because the bigger issue in this case is evidence of identity. R.C. 2945.75(B)(1) mandates that along with producing a certified copy of conviction the state must provide sufficient evidence to identify the defendant

named in the entry as the offender in the case at bar. Thus, the state was required to prove that "Aherice Rahman," who was convicted of a felony drug offense in New Jersey, is Appellant Alterik Rogers.

Ohio appellate courts have indicated identical names alone are insufficient to establish the requisite connection between a defendant and a previous conviction. *State v. Lumpkin*, 10th Dist. No. 05AP–656, 2006-Ohio-1657, 2006 WL 832528, ¶ 16, citing *State v. O'Neil*, 107 Ohio App.3d 557, 669 N.E.2d 95 (6th Dist.1995) ("Names alone are not very reliable, and it appears that the legislature recognized the problem in adopting R.C. 2945.75(B), which speaks of 'sufficient evidence to identify the defendant named in the entry.' The legislative intent was to require identity evidence, not merely name evidence.") and *State v. Newton,* 3d Dist. No. 2–83–20, 1984 WL 8033. However, when the state presents documentary evidence of appellant's prior criminal history from a BCI report, a "slate sheet" printed from the county jail, and a police identification photo of appellant that were all authenticated by testimony it was deemed sufficient for identification. *Lumpkin* at ¶ 18. Those exhibits demonstrated a common name, race, sex, and date of birth with the prior conviction. *Id.* at ¶ 19. Consequently, if there is more than one identifier then it is sufficient to prove identity. *State v. Greene,* 6th Dist. No. S–01–015, 2001 WL 1606831 (Dec. 14, 2001) (name, social security number, and birthdate is sufficient to prove identity); *State v. Lewis*, 4th Dist. No. 99CA2523, 2000 WL 33226193 (Dec. 15, 2000) (evidence is sufficient where state introduced a prior judgment entry with appellant's name, a photograph that resembled appellant, and corresponding inmate and offender numbers).

Here, attached to the New Jersey conviction for "Aherice Rahman" is a search for aliases of "Altereq Rahmen." This list does not include the name "Aherice Rahman." It does, however, include the names "Brian MacNeil," "Brian McNeil," and "Alterick Rogers." The "Brian MacNeil" and "Brian McNeil" names are listed on cases out of Jefferson County. One is on the municipal court cases and the other is listed as an alias on the judgment of conviction in the instant case. The alias "Alterick Rogers" name is spelled differently than Appellant's name Alterik Rogers. The list attached to the New Jersey conviction for "Aherice Rahman" does not indicate that "Atereq Rahmen" is an alias for "Aherice Rahman" or that "Aherice Rahman" is an alias for Appellant Alterik Rogers.

This list of aliases for "Altereq Rahmen" also contains multiple social security numbers and dates of birth. One of the social security numbers listed does match a social security number found in the file for Appellant Alterik Rogers. The judgment entry for "Aherice Rahman," however, does not list a social security number so it is difficult to discern that "Alterik Rogers" is an alias for "Aherice Rahman," or vice versa.

As to date of birth, the New Jersey conviction indicates that the date of birth for "Aherice Rahman" is July 21, 1975. One document in the file before us indicates that Appellant Alterik Rogers' birthdate is July 21, 1975. The alias list attached to that conviction identifies two different birth dates for the alias "Alterick Rogers," July 21, 1975 and September 29, 1973. Thus, Appellant Alterik Rogers, alias "Alterick Rogers," and "Aherice Rahman" do use/have the same birthdate.

The list of aliases also identifies tattoos. However, in this case, there was no evidence presented concerning whether Appellant had any tattoos. Furthermore, the New Jersey conviction does not contain a photograph of "Aherice Rahman;" therefore, it could not be compared to Appellant.

Considering the above, there was not sufficient evidence produced to prove Appellant and "Aherice Rahman" (the name on the New Jersey conviction) are the same person. The documents submitted to the jury demonstrate that "Altereq Rahmen" is an alias for "Brian MacNeil," "Brian McNeil," and "Alterick Rogers." Yet, it does not indicate that "Aherice Rahman" is an alias for "Brian MacNeil," "Brian McNeil" or "Alterik Rogers." Likewise, there is no social security number for "Aherice Rahman" that could link that name to Appellant. Although one birthdate listed for alias "Alterick Rogers" may be the same birth date listed for Appellant Alterik Rogers and "Aherice Rahman", this alone is not sufficient to prove identity.

It is acknowledged that Appellant admitted at the sentencing hearing that he was incarcerated in New Jersey three times for drug offenses. 6/30/14 Sentencing Tr. 11. For purposes of showing sufficient evidence at trial of disability, i.e. Appellant was previously convicted of a felony drug offense, that information is inconsequential. We can only consider the evidence that was submitted to the jury. *530 Appellant did not take the stand and was not asked about his prior convictions. The state was required to prove disability and chose to do so through a "True Copy" of Appellant's alleged New Jersey conviction. However, as stated

above, the state did not provide sufficient evidence that "Aherice
Rahman" (the name on the New Jersey conviction) and Appellant
Alterik Rogers are the same person.

This assignment of error has merit. The conviction and sentence
for having a weapon while under disability is reversed and vacated
for lack of sufficient identity evidence.

*State v. Rogers*, 34 N.E.3d at 527-530.

Moreover, "even if prior bad acts evidence was improperly admitted by the trial court,

there is no clearly established Supreme Court precedent that establishes that the admission of

such propensity evidence violates the Due Process Clause" and such claim therefore does not

warrant relief. *Werber v. Milligan*, No. 1:11-cv-400, 2012 WL 1458103, at *20 (N.D. Ohio

March 23, 2012) (citing *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (other citations

omitted).

Claim three fails to provide a basis for relief.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen

days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s). A judge of this Court shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which objection is

made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may

recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 *s/ Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
Chief United States Magistrate Judge